I'll turn to Patino versus Redi-Carpet Sales 20-4081. One second here. Usually we have time while council are picking up their briefcases from the council table and Yes, your honor. Thank you. May it please the court. My name is Jason Haymore. I represent Michelle Patino, who worked as an office manager for a flooring company named Redi-Carpet. Miss Patino became pregnant, talked to her supervisors about maternity leave, and ultimately was terminated either during maternity leave or maybe shortly after, depending on the side of the facts we're looking at. In conjunction with these facts, we brought claims for violations of Title VII and the Pregnancy Discrimination Act, as well as violations of the Family and Medical Leave Act. I'd like to start by addressing the violations of the Family and Medical Leave Act. And I think it's critical at this point to begin with the issue, defining the issue specifically, what is at this court today. And the issue at this court today is whether or not defendants or Redi-Carpet should be equitably estopped from claiming lack of jurisdiction as a defense to the FMLA claims. At summary judgment on this matter, the only issue heard was whether or not jurisdiction existed. We did not get to the merits of the claim and it was dismissed completely on jurisdictional issues. Could that be because you didn't assert in your from denying the FMLA claim? I don't believe that's the basis. I didn't see anything in the complaint or I didn't see any point where you actually asserted an equitable estoppel argument. You were just simply arguing that this was an FMLA retaliation argument. It wasn't that they should be equitably estopped from arguing that the FMLA didn't apply. That's not what your complaint argued, is it? No, in the complaint and at the time, Your Honor. Wasn't that a problem? Because the district court, based on the complaint, found that the FMLA didn't apply, period. And if there was no complaint argument that there was essentially an exception that could be equitably estopped from arguing it didn't apply based on their conduct, why would the district court have ruled on that at the summary judgment stage? It doesn't make any sense to me. And I think the answer to that, Your Honor, is that at the time that the complaint was drafted and up until that point, no defense had been made about whether or not jurisdiction was applicable. Well, you have an obligation to amend your complaint if you need to take a equitable estoppel is the only way you're going to get there. And you didn't ever amend your complaint. Is it in the pretrial order? Is there a pretrial order? Do you talk about equitable estoppel in the pretrial order? I mean, is there anything? The first time that equitable estoppel was brought up by either party or lack of jurisdiction was brought up at either party was at the summary judgment. Right. So Discovery proceeded without anybody focusing on whether the company was estopped, right? That's correct. That's a problem when you get to summary judgment stage. I didn't see anything in your allegations supporting equitable estoppel that was actually no citations to the record. The grounds upon which the case was dismissed upon summary judgment was not because of a lack of pleading. The grounds upon which at the district court level, it was dismissed as because it was found there that my client had not reasonably relied or I'm sorry, had not suffered a detriment due to her reliance. And so we took appeal upon that issue. And so that's where things are at. In the summary judgment order, I'm just talking about uh, it looks to me like you didn't, there was never any focus in Discovery on whether or not the company should be equitably estopped by their actions. And I believe that was the case because there wasn't a defensive lack of jurisdiction raised at the time. The information that okay, seated on. Okay. So you didn't, you didn't assert that the company should be equitably estopped in the complaint and you didn't do Discovery on that. Your Honor, I don't remember as I sit here right now, whether or not it was mentioned in the complaint or whether it wasn't. I do know that throughout the course of Discovery, there were some questions mentioned about how, whether the company met the 50-75 rule or not. And that that issue was discussed in summary judgment at length and that ultimately in, in um, summary judgment. You're not challenging that though. You're not challenging that the equitable stop at this point. Yes. So at this point we were in agreement. It came out through Discovery that they did not meet the 50-75 rule. But the issue is when my client went and inquired about medical leave, uh, for purposes of pregnancy leave, um, she was told that the company offered FMLA leave. She filled out FMLA paperwork. She submitted it. They accepted it. They came to which we would submit to her detriment, um, in that she ultimately lost her job over issues related to leave, which she thought was federally protected. Of course she wasn't on FMLA leave. She took FMLA leave up until early December. Then all through December she was getting paid and into January she was getting paid plus benefits. She was no longer taking FMLA leave. So even if, even if you pled it, even if it's properly, the equitable estoppel argument is how did she, what's the evidence in the record that she relied on that in any sense? And that, I mean, she wasn't even on FMLA leave at the point. So I'm, I'm, I'm having a hard time connecting the dots here for you. Yeah. And your Honor, I certainly understand your question and certainly that's the position that Judge Benson took at the lower court. Uh, we think that's in error because clearly my, my client was entitled to three months of FMLA leave. The record is throughout the course of her employment from her supervisor meeting with her and pressuring her to take less than the full amount of the leave. They negotiated how the leave was going to work. And instead of taking a full three months off, the ultimate decision between the parties was that she would take the first few months off. And then the last month would begin working from home and helping them with things and then would start working in the office a few days and then would go in. So when, when Ready Carpet came to my client and said, you've got to be in the office tomorrow, her impression was, well, wait a minute. We agreed upon what my maternity leave was going to look like. I've submitted my FMLA paperwork. This is all part of the agreement that we had. And of course the, but her maternity leave and what it was supposed to look like was part FMLA leave up through the beginning of December. And then after that, there was no weeks before she was ever terminated. So I don't understand how, how you can combine her being paid full time with benefits with her FMLA. You call it an FMLA leave package, but there's no evidence in the record to support that, that I could see. And that's, that's a, uh, an understandable position, your honor. I think my response to that would be that there is nothing that would prohibit an employer for paying somebody during FMLA leave while they're on time off. They're not required to, but there's also nothing that would prohibit them from doing that. But you've got to support that with that, the record and show that's what they were doing here. And in fact, it appears they were doing exactly the opposite, which was giving her a certain amount of time of what they thought was FMLA leave. And then she was back to work with benefits. And, and I, I would, at home, at home, I would, I would respectively submit your honor that there's nothing in the FMLA that would prohibit an employer and an employee from making an arrangement to work from home on part-time basis or to pay that employee. And I think that there is most definitely a tribal issue of fact as to whether or not that arrangement was made. Um, she wasn't, she was being paid full time. She wasn't on leave. How could that be? That's just not the facts here. She wasn't working part-time. She was being paid to work full-time just at home. I don't understand how you can make those facts work for you. Certainly. Well, perhaps I'm not articulating well. Part of her arrangement for FMLA leave was that she would begin working from home and that she would have the opportunity to work from home and that she would be paid. She wasn't on leave. That's okay. I, I, well, you can move on. I, I, I think I, I apologize. No, no need to apologize. Thank you very much. Appreciate your questions. Um, from, from here, what I would like to do is turn my attention. Um, you know, given the, the lot of discussion we've had on actually, the only thing I would want to say on that is that, you know, from my client's perspective, being told that she has leave being given that leave and consider that one of the claims here is a retaliation claim. Um, if she was retaliated against for having taken FMLA leave, that certainly would have been to her detriment. But the question we have here is really whether equitable estoppel should apply in this situation and whether it isn't. And we, we submit that it should, um, turning very quickly to the title seven claims with just a few minutes left. Um, I want to focus on the issues that, um, seem to be most in dispute given the time I've got available and that's whether or not my client was able to because she's unable to show that there were other comparators. Um, the first thing that I wanted to, um, of course the, the, uh, the last, um, according to the district court's iteration of the prima facie case for a title seven, the last element was that she would need to prove the existence of comparators who were treated more favorably than she was. I would like to point out to the court that that's not the only iteration of law that exists in order to prove a title seven claim. There are lots of situations in which comparators are not available. And in those situations, plaintiffs are still allowed and have the opportunity to bring title seven claims. Um, the prima facie showing is not a, a inflexible, um, iteration. Um, other courts, um, have simply said, as we've cited in our brief, that to satisfy that last element, the circumstances surrounding the action giving rise to an inference of discrimination also satisfy a fourth element of that case. And in that scenario, um, consider that my client has alleged, and there is lots of information on the record, um, concerning whether or not she received pressure to take maternity leave, not take maternity leave, that she did ask for maternity leave, um, and that ultimately she was not given that maternity leave. Shortly thereafter, she was placed on a performance improvement plan and terminated because, um, she took advantage of, um, the, the leave time and, and, and that in course with the, um, employer's decision to turn course from their decision, call her back to the office the very, you know, very next day without an opportunity to make any other arrangements and terminate her when she wasn't able to do that. All of that gives rise to an inference of discrimination. Could you, could you, uh, crystallize for me, if you would, on what your actual claim of discrimination here is. The way you worded in your complaint several times is you talk about her, she was terminated because of her pregnancy and insistence upon an accommodation. And, and my understanding of what you're saying is she insisted upon an accommodation. And what you mean by that is she wanted to be able to work at home. She didn't have childcare. So she wanted to be able to work at home and, and still be paid. Um, and so is that, you're saying that that's how they discriminated against her is that they, because she wanted to work at home and have, and, and, uh, cover her childcare situation? Yes. And the claims and the various elements are kind of molding together here a little bit. So let me see what I can do. And I, let me say, the reason I ask is because that's problematic because that's not protected under title seven. I mean, whether it should be or not, it's not, it's covers pregnancy, childbirth or related medical conditions. And I don't, I don't see where you've made this about a related medical condition or her pregnancy or her child or her a little confused about it. Thank you, your honor. Let me address that specifically that that specific element we cited in, as it relates to our retaliation claim. And in the retaliation claim, you have to show that you engaged in protected activity, protected activity would include asking for an accommodation in the same way that, um, any other person with a similar health condition would be given an accommodation. It's the discrimination act and individual is entitled to. You're, you're, you're, you have a title seven retaliation claim. This doesn't have any, you didn't make any kind of disability claim here. No claim that she wasn't accommodated. This is about title seven, right? That's, that's right. And what, what protected opposition to discrimination? Cause that's what title seven requires protected opposition to So under the pregnancy discrimination act and a pregnant employee is entitled to the same accommodations as anybody else would be under similar health circumstances and time off to have the baby, but that's not, where did she complain or oppose some practice of her employer where she has to be retaliated against for opposing discrimination, essentially, and asking for time off or asking for an accommodation or asking for leave. That's not protected opposition. At least certainly not aware that it ever has been. I see that my time is up and running. I, with your permission, I didn't try to answer the question. So she, she most certainly opposed her termination and she most certainly considered all of the time that she was given in the arrangement that she made for maternity leave to be protected when she was terminated. There are a series of emails between her and her supervisor with her telling them, Hey, I had, this was protected. I could have taken three months. You didn't get post termination. She, you think her protected conduct was post termination then? I'm sorry, I didn't understand your question. Well, it's a retaliation claim. So she has to, presumably the termination was in retaliation. The retaliation was, was her termination. So it would have had to been conduct that occurred prior to her termination. That's what I'm saying. That's all right. I think you've answered it. I think Judge Hart's got a question. So just wanted to clarify one issue. You talked about the pressure on her to take less time off and so on, but your reply brief says that you're not claiming that that pressure was an adverse employment action. Am I correct? That's correct. I wasn't sure why you were mentioning it, but you're not claiming that that was an adverse employment action. No, we, we, we mentioned that at this point to discuss and point out the sequence of events leading from the time that she announced she was pregnant up through the time of her discrimination. Thank you, Ms. Chamberlain. Ms. Smith. Good morning. Scarlett Smith on behalf of Ready Carpet of Utah. Ms. Patina's former employer. Full-time employment is not leave and child care does not qualify you as a protected class. In this case, Ms. Patina requested 42 days of maternity leave and she received it. She made an arrangement with Ready Carpet to work from home following her leave and after poor work performance during that work from home arrangement, Ready Carpet demanded she work in the office. Now she refused and she stated her reasons were for child care. By her account, Ready Carpet went back on its agreement that she could work from home. That may sound in contract, but it Now, Title VII and FMLA are statutorily defined causes of action. This means that Congress has actually defined what types of claims and benefits can be brought under those statutes. Turning to Title VII first, Ms. Patina alleges discrimination and retaliation under Title VII. Starting with the retaliation claim, the issues that we were just, just discussing, Section 2000E3A requires retaliation only because of the employee's opposition to a practice that is unlawful under Title VII. This means that Ms. Patina would have had to show both that she opposed something that was unlawful under Title VII and that there was something unlawful under Title VII. There's never been any allegation or even or any evidence, this is summary judgment stage, neither in the record or in the briefing on summary judgment regarding an opposition, let alone a Title VII misconduct, which in turn turns to discrimination, right? The PDA is a definitional amendment to the gender-based discrimination that's prohibited by Title VII. It, it basically defines that the terms because of sex and on the basis of sex will include people who are pregnant and childbirth or who have related or pregnancy-related medical conditions. It also says- Hold on, let me stop you there, Ms. Smith. Let me stop you there because your, your brief takes the position that it, that it only covers people who are pregnant. It covers pregnancy discrimination and certainly pregnancy discrimination could occur post-pregnancy, couldn't it? There's a case law holding so. Your Honor, I think that in those specific cases, they, they tend to relate to medical conditions related to the pregnancy. It's not a- If you fired her the day after she gave birth because she was, she, because she'd gotten pregnant and had to take time off and you really didn't appreciate that and you fired her the day after she'd given birth, are you suggesting that that wouldn't, she wouldn't have a cause of action there under Title VII? Your Honor, under those circumstances, I think that there probably would be a question of fact that could go to a jury. Under these circumstances- But your, your brief makes it sound as though pregnancy discrimination only extends as long as you're pregnant. I just want to clarify that that's not your position. Oh, no, Your Honor. That's not necessarily the position. The position here and the reason why probably that it was focused so, so sorely there is because here the only adverse employment action that was legitimately discussed on appeal is termination. Termination. Which happened well after we- Well, how long was it after? Um. Six weeks? About that, I believe. Five weeks? It was about five, four, five weeks. I don't know. Yeah. After her leave. Now, mind you- Yeah, while she'd been on leave, right? Right. What, what makes this case- Why couldn't that? Can she, she alleges that her supervisor made certain comments about his unhappiness essentially with her being pregnant and what that meant for the company and the work it was going to make for him. Why couldn't it, why isn't it plausible that once she wasn't able to come back to work even, even though they'd agreed that she could work at home and then they told her, no, you can't work at home. Why isn't it plausible that they then fired her because of her pregnancy? Basically, we don't want to have this happen again. We're, we're done with this. We're done extending any- I think, I think it's, in this case- Eight weeks later, it could still have been because of her pregnancy. I'm not sure that's what she's alleging. I'm just asking you, is that possible? Your Honor, that's, that's exactly, I think in other circumstances, that'd be very interesting academic discussion. But here, the point is, is that there was very clear evidence on summary judgment. She admitted, I refused to come back to work because I didn't have childcare. It was clear that her refusal to come back, mind you, not come back to work in the sense of working full-time. She was already working full-time. She'd already shown that she worked full-time. She'd already shown- But of course, they had agreed that she wouldn't have to return to work until, wasn't it February 1st? They changed their mind, I understand, right? But- No, that's not- No, that's not- That doesn't, that doesn't, that has nothing to do with Title VII. That may have something- Well, I'm saying maybe it could. I mean, maybe, maybe it could have something to do with her pregnancy and that's where I was going with this. Gotcha. I mean, I think based on the facts that have been presented and plaintiff carries the burden here, nothing suggests that she was a pregnant person when she was terminated, that it was necessarily connected to that. It was, in fact, what she admits was, and this is in her deposition as well as on summary judgment, is that she was terminated because she refused to come back to the office and she couldn't do that because of childcare. Now, that's why this case is different, is because she made that affirmative statement that her refusal to come back was the reason she was terminated and the reason she couldn't come back, or sorry, her reason for refusing was the lack of childcare. Of course, my point is her lack of childcare, she asserted, was because they had agreed that she could work from home until a certain date and she didn't have childcare lined up because that was the agreement. She randomly decided I need more time and they said, no, sorry, you can't have more time. Right. Now, that certainly sounds like some sort of violation of an agreement possibly, perhaps, but that's not a protected class under the PDA. The PDA is very clear in its wording and it only extends to those with medical conditions related to pregnancy. Now, is there any evidence that it's regarding her pregnancy? No. That's what I was asking. No. Is that evidence about- The evidence that's undisputed is exactly opposite of that. It had everything to do with her refusal to come back to the office and she affirmatively states that's because she had no childcare. What about the statements, the numerous statements her supervisor made about how hard this was for him and how this was making things difficult, essentially, and complaining about her pregnancy? Sure. What about those? They certainly asserted that there's lots of pressure and that there was these statements repeatedly. There's only been two statements that are actually identified in all of this time, but what she does admit in the record is that all of statements were with regards to his efforts to try to make accommodations while she's gone, and that none of those statements came from corporate or anyone else. Kind of a fine line, isn't it, though? It may be, but that's something that- I don't know if you're familiar with our past- Ms. Patino had the burden of summary judgment and has not put forth any evidence that beyond asking her- I mean, these are vague statements, so it required quite a bit of inference and speculation to get to that point, and based on the things that are undisputed, really don't provide a disputed fact for a reasonable jury. Sorry. I guess to that point, we believe that she didn't qualify as a protected class under PDA, but more than that, I mean, Mr. Haymore discusses this comparator issue. I think that jumps ahead quite a bit, but more than that, PDA actually discusses the prohibition and discusses the fact that these folks who are pregnant or in childbirth or who suffer from these medical conditions need to be treated the same as others and similar abilities or disabilities. Now, there's a broad assertion that there were comparators. We just want to point out that there is no evidence on that. The only thing that there is is a statement from a fellow employee, not as a representative of the company. There was no discovery on this topic. I mean, this is a nationwide company. There was never anything discussed on whether or not other folks- it doesn't have to be folks who are pregnant or giving birth, but similarly, with the inability to work, you know, were treated any different. So, we submit that they failed to meet or that she failed to meet her burden at that stage. Now, turning to FMLA, FMLA just doesn't apply. I think that's undisputed. What is disputed, according to Mr. Haymore, is that whether or not her claims can be saved by equitable estoppel. Now, that might be an interesting issue, considering 10th Circuit hasn't actually decided this issue directly yet. It's kind of skirted it a few times, but so it's not even clear what version of equitable estoppel would apply. All she's asserting is that it absolutely applies, and therefore, her claim should go forward. Well, the 6th Circuit, the equitable estoppel under these circumstances, imposes a more stringent requirement, which would require a knowing misrepresentation. There's nothing in this case that would suggest that Ready Carpet knew their representations were misrepresentations, but going more to the point of what the district court found in this case, or decided in this case, was that Ms. Patino did not suffer any detriment on her reliance about FMLA. Now, Ms. Patino wants to allege, or has alleged multiple times, that the detriment that she suffered was an inability to continue her work-from-home arrangement, and the inability to obtain child care pretty quick. That doesn't tie to the FMLA representations. It was represented to her that she had 12 weeks of leave. She took 42 days. What that does tie to is perhaps this negotiation, as they put it, to have a work-from-home arrangement, and that has nothing to do with FMLA. Why doesn't it have to do with it? If she understood that she had 12 weeks unpaid, and that was her right, and that's what she was told, and yes, she did decide to take part of that for whatever reason, whether she was pressured or otherwise, she took part of it unpaid as FMLA, and then she took part of it. They agreed to let her work at home for the remainder of the 12 weeks, basically. And why, if she had known? I think, presumably, she thought she could finish out that 12 weeks at home because she knew that she could always resort to unpaid leave rather than be terminated, presumably. Does that make sense? I believe I'm following you. If she thinks she's got 12 weeks leave unpaid, why would she think that she would be terminated for not coming back when they wanted within that 12 weeks? Your Honor, that may be what's being suggested here, is that she believed she was on FMLA, which doesn't necessarily support that. That's not what I'm saying, I'm talking about how she might have relied on it. The issue there is that it's not a reasonable reliance. Why? Full-time employment is not leave. I mean, first of all, FMLA doesn't provide for the ability to receive benefits from FMLA while also working full-time and getting your full pay. It does, however, permit for intermittent leave and part-time reduced hours. I understand. Although those things have not been raised. That's not what I'm asking. That would be an unreasonable reliance, though. Counsel, what I'm asking is, the reliance has to be on their alleging, and I'm not sure if she is or not, that she didn't come back to work and she didn't make child care arrangements because she thought that even if she wasn't paid, she still had a few weeks of unpaid leave that she could take. You see my point? Based on their representation that she had 12 weeks of unpaid leave, she hadn't used all of them. Your Honor, that certainly could be an assertion, but I don't see that that's ever been. Okay. I don't think that's ever been alleged, but more than that, there's, yeah, there's certainly no evidence that suggests that ready carpet ever represented that the time that she was working from home was FMLA time first. Two, there's nothing that really supports a reasonable reliance or reasonable reliance or kind of the reasonableness of her expectation that this time was also FMLA. She didn't fill out, she didn't include that on her form. I mean, she put an end date. She never included, well, I'm also on FMLA while I'll be working from home. None of that's there. There's no evidence to support that presumption. I think that happens beyond what's been alleged here. Your time is up, but I have a question because I'm trying to figure out what's going on in this exchange here. The issue is whether she would be better off in any way if in fact she had been covered by FMLA. If she was, if in fact ready carpet was governed by the FMLA, this office of ready carpet, would things have been any different? I'm not, it's not clear to me how it would have been any different because they both assumed that ready carpet was under FMLA. I think I'm saying something favorable to you, but. No, I actually think you are. And that's kind of the point is all parties, that's something I appreciate you pointing that out is all parties here have been working under the assumption that she had FMLA, even though she probably didn't actually qualify or she didn't qualify for it, but more than that, I think if you were to take that just a step further, it would create an entirely different issue that's never been alleged in this case, which is, you know, folks on FMLA are not entitled to any greater rights than those that aren't. So it would, it would then turn to a discussion of whether her full work performance, either whether it would be part time or part of her FMLA leave actually justified that combination. So. I think we get your point. I don't think Mr. Haymore had any remaining time. Am I correct about that? That was correct, Your Honor. Yes, you're correct. Okay. Thank you, counsel. Case is submitted. Counselor excused.